# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Ray Taylor,

    Plaintiff,

v.

Ron Lee, et al.,

    Defendants.

No. CV-17-00022-TUC-JAS

**ORDER**

Pending before the Court are several motions in limine filed by both Plaintiff and Defendants. While there are a total of seven motions in limine that were filed (three by Plaintiff and four by Defendant), a review of those filings reflect that they boil down to three overlapping issues; as such, the Court will discuss those issues in tandem in three grouped categories below.[1]

## DISCUSSION AS TO THE MOTIONS IN LIMINE

### General Standards for Admissibility

Fed. R. Evid. 402 provides: "Relevant evidence is admissible unless any of the following provides otherwise: • the United States Constitution; • a federal statute; • these rules; or • other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 401 defines relevant evidence as follows: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 403 provides that: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly

---

[1] The parties are well aware of the facts and the Court discussed the factual background in detail in its 34-page Order denying summary judgment. *See* Doc. 88. The Court need not rehash that background information in this Order. The Court will discuss factual issues as pertinent to the specific motions in limine.

presenting cumulative evidence."

**Motions in Limine at Docs. 122, 124, and 127 (Plaintiff's Criminal Convictions, Custody Levels, and Disciplinary History While Imprisoned)**

The parties filed opposing motions primarily pertaining to relevance and Rule 403 considerations as to Plaintiff's criminal convictions leading to his imprisonment within the Arizona Department of Corrections ("ADC"), and Plaintiff's related ADC custody levels and ADC discipline.

Plaintiff argues that none of this information is relevant and any relevance is outweighed by Rule 403 considerations; the Court disagrees. As correctly argued by Defendants, this information is highly relevant, is intimately intermingled with the claims asserted by Plaintiff, it would be impossible to offer the jury a cogent picture of this case without this information, and any potential prejudice is outweighed by the relevance of this information.

This case involves Plaintiff's claims that Defendants subjected Plaintiff to cruel and unusual punishment in violation of the Eighth Amendment as they failed to properly protect him while in the custody of the ADC. Plaintiff entered ADC custody in September of 2012; from October of 2013 to March of 2018, Plaintiff requested protective custody ("PC") eleven times. Plaintiff alleged that prior to imprisonment, he shot a member of the Westside City Crips ("Crips"); as such, Plaintiff informed ADC personnel that the Crips were seeking revenge, that he was in danger of being assaulted or killed in prison, and that he needed to be placed in PC. In response to Plaintiff's numerous PC requests, ADC personnel continuously conducted their own investigations. These investigations necessarily included intermingled issues relating to Plaintiff's criminal convictions (i.e., discharging a firearm at a structure and misconduct involving weapons) and related police reports leading to his imprisonment, Plaintiff's custody levels, and Plaintiff's interactions with other prisoners and personnel which implicated Plaintiff's ADC discipline, custody levels, and assessment of threats. Based on their investigations, ADC personnel found that no statewide risk throughout all ADC facilities was present, and therefore PC was

unwarranted for Plaintiff.  Rather, the ADC continuously transferred Plaintiff to other ADC facilities as Plaintiff continuously raised new potential threats to his safety at his ever-changing ADC locations; in addition, the ADC added "do not house with" orders ("DNHW") to Plaintiff's file to ensure protection from specific threats identified by Plaintiff.  Nevertheless, Plaintiff alleges that he was attacked and injured by Crips while in ADC custody in 2014 in retaliation for previously shooting a Crip; in contrast, the ADC argues that it took reasonable steps to protect Plaintiff based on the information available related to each PC request, that Plaintiff offered inconsistent and contradictory information throughout his PC requests, and Plaintiff often failed to specifically identify purported threats.  In light of the foregoing, the Court finds that the information at issue is highly relevant, it is intertwined with the claims and defenses, is necessary to give the jury a cogent understanding of the case, and any potential prejudice is outweighed by the highly relevant nature of this information.  As such, Defendants' motions (Docs. 122, 124)  to allow this evidence at trial is granted[2], and Plaintiff's motion (Doc. 127) to exclude it is denied.

**Motions in Limine at Docs. 125 and 129: Direct and Cross Examination of Defendants Smith, Lee and Coffey**

The three remaining Defendants in this case are Smith, Lee and Coffey.  All three defendants were high ranking ADC supervisors who were ultimately responsible for ADC decisions regarding PC placements for prisoners.  As to Coffey, she was personally involved in several of the ADC decisions as to Plaintiff's PC requests, but was not personally involved in all of them.   As to Smith and Lee, according to Defendants, they were not personally involved in making any PC decisions regarding Plaintiff as they apparently delegated all of their PC decisions regarding Plaintiff to subordinates who signed off on PC decisions on their behalf.  This issue was discussed in the Court's previous summary judgment Order whereby the Court stated in part: "Defendants argue that Taylor can provide no evidence that either Smith or Lee were affirmatively involved in any of his

---

[2] As Defendants correctly argue, Plaintiff's felony convictions are also admissible pursuant to Fed. R. Evid. 609(a)(1)(A) for impeachment purposes, and any Rule 403 considerations are outweighed by its relevance.

PC requests, reviews, decisions or appeals . . . Defendants contend that as Security Operations Administrators, both Lee and Smith had a policy of delegating PC appeals to high-level staff for review and decision making and neither Defendant read or considered correspondence from Taylor relating to his PC requests or appeals because they forwarded such correspondence to their designees immediately . . . If Smith and Lee had a policy or practice of delegating their duties to subordinates, and that policy or practice resulted in a violation of Taylor's constitutional rights, a jury could find that Smith and Lee were deliberately indifferent to Taylor's safety by delegating their duties to another individual who ultimately violated Taylor's constitutional rights." *See* Doc. 88 at p. 27 (internal quotes and citations omitted). Defendants contend that there should be no direct or cross examination of them as to issues where they purportedly lack personal knowledge, and such examination would be prejudicial. The Court disagrees; Plaintiff must be allowed to examine all of the Defendants as to the specifics of the PC process as this is necessary to allow the jury to properly assess whether Defendants' decisions to delegate their authority to subordinates in light of the specific circumstances at bar reflected deliberate indifference to Plaintiff's safety while in ADC custody. The relevant nature of this examination of Defendants outweighs any Rule 403 considerations. Accordingly, Defendants' motion in limine (Doc. 125) is denied and Plaintiff's motion in limine (Doc. 129) is granted.

**Motions in Limine at Docs. 123 and 128:  Medical Information**

Plaintiff's motion in limine (Doc. 123) seeks admission of medical and mental health documents that may substantiate his claims of physical and mental health injuries stemming from the 2014 assault and Defendant's continuous failure to place him in PC. However, as Defendants correctly argue in their related motion (Doc. 128) and response to Plaintiff's motion (Doc. 131), Defendants served discovery requests on Plaintiff specifically asking him to identify any documents that could support his claims; Plaintiff, however, never identified any medical or mental health records in support of his claims, and otherwise never disclosed, listed, or identified any medical or mental health records as relevant to this case. Likewise, Defendants served discovery requests on Plaintiff directing

him to identify any individuals with relevant information that could provide support for his claims, but Plaintiff never identified any medical personnel that had information relevant to such claims. The time to identify such information expired more than two years ago when discovery closed; no specialized legal training was necessary on Plaintiff's part (who was pro se at the time) to identify (while discovery was still open) potentially relevant health information in support of his claims. Allowing such health records at this point in time would be prejudicial as discovery has closed, the Court is not going re-open discovery, and Defendants would not have an opportunity to conduct responsive discovery to refute the medical and mental health claims, theories, and damages Plaintiff seeks to advance via the untimely identification of these specialized medical documents. As such, Defendant's motion in limine (Doc. 123) to exclude these documents is granted, and Plaintiff's related motion in limine (Doc. 128) as to these documents is denied.

On a closely related note, Plaintiff's motion (Doc. 128) argues that he should be allowed to offer testimony as to the medical and mental health issues he experienced arising from the 2014 assault and denials of PC; Defendants' motion (Doc. 123) argues that Plaintiff does not have the medical training and expertise to offer testimony on such issues. At this point in time, it is premature for the Court to rule on these portions of the motions as the Court does not have sufficient information. The Court does not know exactly what Plaintiff will say, how it will be said, in what context it will be said, and what other testimony and evidence is implicated related to Plaintiff's testimony as to these issues. As a general matter, Plaintiff is free to offer testimony as to issues which he personally experienced (i.e., issues such as his own pain, fear, despair arising out of his experiences at the ADC related to the denial of PC), but Plaintiff can not offer testimony outside of his lay experience (i.e., issues such as medical causation). The parties' motions (Docs 123, 128) are denied as premature as to Plaintiff's potential testimony as to these issues; the parties may raise these issues as they actually come up in the midst of trial.

**Conclusion**

Accordingly, in light of the foregoing discussion, the parties' motions in limine

(Docs. 122, 123, 124, 125, 127, 128, 129) are granted and denied as specifically discussed above.

**POTENTIAL TRIAL DATES**

The parties have indicated that the trial in this case may last up to five days. The Court has reviewed its calendar and could accommodate a five day trial during the weeks of: 1/11/22, 1/17/22, or 2/21/22. If these dates do not work for the parties' schedules, they may consult and give the Court three mutually agreeable trial dates subsequent to the dates given by the Court. By no later than **9/17/21**, the parties shall consult and file a notice with the Court indicating what trial dates work for the parties. After the Court receives the parties' notice, the Court will issue an Order setting a trial date. Typically, the Court holds a pretrial conference approximately 14 days before trial, and the Court directs the parties to submit jury instructions, proposed voir dire, and verdict forms 30 days prior to trial. The Court has attached a standard Pretrial Order it issues pertaining to these trial issues so the parties will have a better idea of looming matters to better assess mutually agreeable dates for trial.[3]

Dated this 9th day of September, 2021.

Honorable James A. Soto
United States District Judge

---

[3] The Court notes that its standard practice is to address civil motions in limine in conjunction with setting a mutually agreeable civil trial date with the parties. However, due to the continuing COVID-19 pandemic, civil trials were substantially restricted due to health and safety concerns. As such, the Court has been holding its decision as to the motions in limine in abeyance. While the Court had hoped that the pandemic would have largely waned by now in light of safe and effective vaccines, that has not come to fruition in light of vaccine hesitancy and the Delta variant. As it appears that COVID-19 may be an issue the Court, litigants and jurors will be facing for an extended period of time, the Court finds it prudent to now issue the Order at bar.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ***,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>***,<br><br>　　　　Defendants. | No. CV ***-TUC-JAS<br><br>**ORDER** |

　　IT IS HEREBY ORDERED as follows:

(1)　　By no later than *** the parties shall file:

(a) One joint set of stipulated preliminary jury instructions that both parties agree are appropriate for trial.  These jury instructions will be read at the beginning of the case.  The parties shall submit the stipulated preliminary jury instructions in the exact order they want them read to the jury; the parties shall provide the full text of their requested instructions.  As to citing authority, a citation to the model jury instruction number or other authority is all that is required in relation to stipulated preliminary jury instructions.

 (b) One joint set of stipulated final jury instructions that both parties agree are appropriate for trial.  These jury instructions will be read at the end of the case.  The parties shall submit the stipulated final jury instructions in the exact order they want them read to the jury; the parties shall provide the full text of their requested instructions.  As to citing authority, a

citation to the model jury instruction number or other authority is all that is required in relation to stipulated final jury instructions.[1]

(c) One joint set of stipulated mid-trial jury instructions (if any) that both parties agree are appropriate for trial. These jury instructions will be read in the midst of the case. The parties shall submit the stipulated mid-trial jury instructions in the exact order they want them read to the jury; <u>the parties shall provide the full text of their requested instructions</u>. As to citing authority, a citation to the model jury instruction number or other authority is all that is required in relation to stipulated mid-trial jury instructions.

(d) One joint set of jury instructions that the parties can not agree on. The party advancing a disputed jury instruction shall briefly explain why that instruction is appropriate and cite authority to support the proposed jury instruction. Immediately after the explanation supporting the disputed jury instruction, the opposing party shall briefly explain why that instruction is inappropriate and cite authority to support the opposition. Where applicable, the objecting party shall submit an alternative proposed instruction covering the subject or issue of law.

(e) One joint set of stipulated voir questions. As to stipulated voir dire questions, the parties do not need to cite authority or give a justification for stipulated voir dire questions. Generally, the Court will be inclined to read stipulated voir dire questions to the jury.

(f) One joint set of proposed voir dire that the parties can not agree on. The party advancing a disputed voir dire question shall briefly explain why that question is appropriate and cite authority to support the proposed question. Immediately after the explanation supporting the

---

[1]The Court notes that it likely will not read any additional instructions other than those specifically submitted by the parties pursuant to the deadline in this Order; as such, the parties should submit all jury instructions they feel are necessary for the jury in this case. After the Court receives the jury instructions from the parties, the Court will either discuss the instructions at the final pretrial conference, or issue an Order informing the parties what instructions were accepted and rejected prior to trial such that they will know the substance of all the preliminary and final jury instructions prior to trial. Likewise, prior to trial, the Court will either discuss verdict forms at the final pretrial conference, or issue an Order informing the parties what verdict forms will be used at trial.

1  disputed question, the opposing party shall briefly explain why that question is inappropriate
2  and cite authority to support the opposition.  Where applicable, the objecting party shall
3  submit an alternative proposed question covering the subject or issue of law.  Generally, the
4  Court will be disinclined to read disputed voir dire questions to the jury.[2]
5  (g) Proposed jury verdict forms (the parties shall indicate if the verdict forms are stipulated
6  forms).   In addition, copies of all of these documents shall be mailed to chambers (to the
7  extent there are any exhibits, tabs must be included) and **Word Perfect or Word versions**
8  **of all of these documents shall be emailed to chambers**
9  (soto_chambers@azd.uscourts.gov).
10    As model instructions are constantly updated, the parties shall refer to the Ninth Circuit
11  website for the most recent versions of the Ninth Circuit Civil Model Jury Instructions.
12  Model instructions from this website are searchable and jury instructions can be cut and
13  pasted from this website into Word Perfect or Word documents.  The parties should proceed
14  in the same manner as to the most recent versions of the applicable Revised Arizona Jury
15  Instructions (Civil)("RAJI").  Ninth Circuit Civil Model Jury Instructions and the RAJI are
16  likely to be adopted by the Court assuming such instructions are applicable under the
17  circumstances whereas non-Ninth Circuit Civil Model Jury Instructions (unless stipulated)
18  and non-RAJI instructions (unless stipulated) are less likely to be adopted unless a specific
19  explanation and citation of authority supports the proposed instruction.
20  (2) The Pretrial Conference shall be held on *** at *** in Courtroom 6A.  Counsel for the
21  parties shall personally appear in Court at the Pretrial Conference.  After reviewing the

---

[2]To aid the parties in formulating their own voir dire and to help the parties avoid covering issues the Court will have already covered in its voir dire, the Court has attached a sample voir dire script the Court has used in a previous civil case which reflects the typical questions the Court asks of the jury in civil cases. *See* Attachment (Sample Civil Voir Dire Script). Typically, the Court asks the general voir dire questions reflected in the attachment, and then if necessary, gives each side a maximum of 30 minutes each to ask any additional questions of the jury that were not adequately covered by the Court's voir dire. *See generally* Fed. R. Civ. P. 47.

- 3 -

1  parties' pretrial filings, the Court may find that the *** pretrial conference is unnecessary;
2  if this occurs, the Court will issue an Order vacating the pretrial conference.
3  (3) The Jury Trial shall begin on *** at *** in Courtroom 6A.  Typically, trial days begin at
4  9:30 a.m. and end at 5:00 p.m.  There is one morning recess, lunch, and one afternoon recess.
5  The trial will continue each consecutive weekday until the trial concludes.  The parties have
6  indicated that trial will last *** days.
7  (4) The parties shall prepare at least four exhibit binders for trial that contain all the exhibits
8  that are stipulated for admission by the parties (i.e., one for the Court, one for witnesses, one
9  for counsel representing each opposing party or group of parties, and one for themselves).
10 The parties shall prepare at least four exhibit binders for trial that contain all the exhibits that
11 are unstipulated.  The parties shall have these exhibit notebooks completed and give them
12 to the Courtroom Deputy in the morning on the first day of trial.  *See* Attachment
13 (Instructions for marking and submitting exhibits, exhibit lists, and witness lists for trial).
14 The parties shall contact the Court's Courtroom Deputy (Tiffany Dame-#520-205-4682) if
15 they have additional questions regarding organizing exhibits, or if they would like to
16 schedule a time to view the Courtroom and to test the Courtroom's equipment prior to trial.
17 Likewise, to the extent the parties may use depositions at trial, the parties shall prepare at
18 least four stipulated deposition binders for trial and four unstipulated deposition binders for
19 trial. *See id.* All of the binders must be accompanied by a Table of Contents; any exhibits
20 or depositions must be indexed with tabs that protrude from the documents and shall
21 correspond to the Table of Contents.   The parties are strongly encouraged to thoroughly
22 consult with each other such that as many exhibits and depositions as possible are stipulated
23 to be admitted at trial.  The parties' failure to specifically seek, obtain, and be willing to
24 stipulate to the admission of evidence at trial may result in sanctions especially in light of the
25 fact that consistent objections to evidence at trial drastically expands the time that the jury,
26 the Court, and the parties must expend on the trial. To the extent the parties are unable to
27 stipulate to admission after exhausting all reasonable efforts to obtain stipulations, the parties
28 should be prepared to thoroughly explain why they could not stipulate to admission, and each

side should be able to thoroughly explain why a particular piece of evidence should or should not be admitted in the midst of trial.  The Court notes that to the extent certain issues could have and should have been specifically raised in timely motions in limine, such issues may be deemed untimely or otherwise waived if they are raised by the parties at trial.

(5) Unless otherwise stipulated and approved by the Court, the jury in this case shall consist of 8 jurors; any verdict must be unanimous.  *See generally* Fed. R. Civ. P. 48(a) and (b) (a jury must consist of at least six, and any verdict must be unanimous and returned by at least 6 jurors).  The respective parties shall be entitled to 3 peremptory strikes (3 for Plaintiff, 3 for Defendant) each for a total of 6 peremptory strikes in this trial.  *See* Fed. R. Civ. P. 47(b); 28 U.S.C. §1870.  The civil rules do not provide for alternate jurors in civil trials.  Prior to the parties exercising their peremptory strikes, some jurors will likely be struck for cause.  As to peremptory strikes, LRCiv 47.1 states: "Each side shall exercise its peremptory challenges simultaneously and in secret.  The Court shall then designate as the jury the persons whose names appear first on the list."  Near the beginning of voir dire, the parties shall be prepared to give a five minute mini-opening which gives the jury pool a general overview of the case; this mini-opening is not a time for extended arguments to the jury, but only a chance to give the jury a preview of the case.

(6) Counsel for the parties shall communicate with any individuals that may appear in court throughout the trial to ensure that they are apprised of proper court decorum.  This includes wearing proper attire, silencing cell phones, remaining quiet, and refraining from recording photo or video from the court.  Information regarding decorum shall be relayed to any parties, witnesses, and family and friends of parties or witnesses that may appear in court at any time throughout the proceedings in this case.

(7) The parties' proposed joint pretrial order is adopted as the final pretrial order of the Court (hereinafter, the "PTO") to the extent consistent with this Order, previous Orders, and any future Orders impacting the jury trial in this case.  To the extent the parties have summarily listed objections (i.e., foundation, hearsay, Rule 403, etc.) to evidence listed in the PTO that were not included in timely motions in limine, or have briefly raised issues that were not

1  included in timely motions in limine, any such objections or issues will be ruled on as
2  deemed necessary as they arise in the midst of trial. The parties are warned that to the extent
3  such issues could have and should have been specifically raised in timely motions in limine,
4  such issues may be deemed untimely or otherwise waived if they are raised by the parties at
5  trial. NO WITNESS OR EXHIBIT, OTHER THAN THOSE SPECIFICALLY LISTED IN
6  THE PTO AS ADOPTED AND AMENDED BY THE COURT, MAY BE CALLED AT
7  TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS
8  ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R.
9  Civ. P. 16(e). FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY
10 BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE
11 DISMISSAL OF THIS ACTION WITH PREJUDICE OR ENTRY OF DEFAULT, ON
12 ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES
13 NON-COMPLIANCE WITH THIS ORDER.